U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET



**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed July 31, 2009**

_____
**United States Bankruptcy Judge**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| TOCFHBI, INC., | § | CASE NO. 06-31563-SGJ-7 |
| DEBTOR. | § | |
| | § | |
| | § | |
| ROBERT MILBANK, JR., AS TRUSTEE | § | |
| FOR THE BANKRUPTCY ESTATE OF | § | |
| DEBTOR TOCFHBI, INC. F/K/A THE | § | |
| HOLMES BUILDERS, INC., GARY | § | |
| CARPENTER and JULIE PEREZ, | § | |
| PLAINTIFFS, | § | |
| | § | |
| VS. | § | ADVERSARY NO. 07-03292 |
| | § | |
| TERRY HOLMES, ET AL., | § | |
| DEFENDANTS, | § | |
| | § | |
| ROBERT MILBANK, JR., TRUSTEE | § | |
| OF DEBTOR TOCFHBI, INC., f/k/a | § | |
| THE HOLMES BUILDERS, INC., | § | |
| INTERVENOR. | § | |

**MEMORANDUM OPINION IN SUPPORT OF: (A) ORDER GRANTING IN PART AND
DENYING IN PART MOTION FOR SUMMARY JUDGMENT OF SETTLE & POU, P.C.
[DE #148]; AND (B) ORDER GRANTING IN PART AND DENYING IN PART
RULE 12(b)(6) MOTION TO DISMISS OF MCMANEMIN & SMITH, P.C. n/k/a/
McELREE, SAVAGE & SMITH, P.C. [DE # 121]**

CAME ON FOR CONSIDERATION by this court both: (a) the

Motion for Complete Summary Judgment [DE # 148], filed by Settle
& Pou, P.C. ("Settle Pou"), one of the Defendants in the above-
referenced adversary proceeding, and (b) the Motion to Dismiss
various claims, pursuant to Rule 12(b)(6) [DE # 121], filed by
McManemin & Smith, P.C. n/k/a McElree, Savage & Smith, P.C.
("McElree Smith"), another Defendant.  Both of the moving
Defendants are law firms that provided prepetition legal services
to the above-referenced Chapter 7 debtor ("Debtor"), and have
been sued along with numerous other Defendants by the Chapter 7
Trustee[1] in connection with certain prebankruptcy business
restructuring and/or asset protection measures undertaken by the
Debtor.  As these law firms have presented almost identical
issues to the court, regarding the viability of the Chapter 7
Trustee's claims against them, the court has decided to rule on
these matters in a consolidated fashion.

### I. MOTION FOR SUMMARY JUDGMENT OF SETTLE POU LAW FIRM

First, with respect to the Defendant Settle Pou's Motion for
Summary Judgment, based on the summary judgment record and
arguments presented, the court rules as follows:

---

[1] Gary Carpenter and Julie Perez, a married couple and
creditors of the Debtor, are co-plaintiffs with the Chapter 7
Trustee in this adversary proceeding.  Carpenter/Perez originally
sued certain of the Defendants prepetition in state court for
alleged fraudulent transfers.  The state court action of
Carpenter/Perez was removed to the bankruptcy court after the
bankruptcy filing, the Chapter 7 Trustee stepped in as a co-
plaintiff, and then various other causes of action and parties
were added to the action.

The court has jurisdiction in this matter pursuant to 28 U.S.C. §§ 1334 and 157, and as restricted by the Order on Motion to Withdraw Reference, entered February 8, 2009 [DE # 46], by District Court Judge David Godbey.[2]   This ruling is issued pursuant to Federal Rule of Bankruptcy Procedure 7056.

A summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "A summary judgment motion is properly granted only when, viewing the evidence in the light most favorable to the nonmoving party, the record indicates that there is no genuine issue as to any material fact."  *Am. Home Assurance Co. v. United Space Alliance, LLC,* 378 F.3d 482, 486 (5th Cir. 2004).

The following is a summary of the material facts presented in the summary judgment record:

---

[2] As there are non-core matters raised in this adversary proceeding, and since a jury trial was requested, and there was no unanimous consent of the parties that the bankruptcy court preside over the jury trial, this court recommended to the District Court withdrawal of the reference, at such time as the bankruptcy court certifies that the adversary proceeding is ready for trial.  Thus, the District Court has ordered this court to preside over pretrial matters and to certify to it when the adversary proceeding is ready for the jury trial (at which point the District Court will withdraw the reference).

A.    Overview of Facts.

1.    This adversary proceeding, distilled to its essence, alleges fraudulent transfer liability and various other tort causes of action against various Defendants in connection with a business restructuring scheme, orchestrated by the Debtor and others, which allegedly resulted in the transfer of assets, contracts or other items of value from the Debtor to newly formed limited partnerships without adequate consideration in return.

2.    The Debtor, previously called the Holmes Builders, Inc., was a long time home builder in the Dallas-Fort Worth area since about 1982.  The Debtor first developed a relationship with the Settle Pou law firm sometime in the mid-1990's, which relationship appears to have lasted until at least 2005.

3.    Viewing the summary judgment evidence in the light most favorable to the non-moving party (*i.e.,* the Chapter 7 Trustee), it appears that the legal services that Settle Pou provided to the Debtor included:  (a) setting up a new business structure, whereby several Holmes[3] entities were created, in which each entity would own one parcel, or a block of parcels of realty, such that the new separate entities would not be liable for each other's liabilities, (b) allegedly facilitating the transfer of a multi-million dollar contract, allegedly from the Debtor to one

_____

[3] "Holmes" refers to Terry Holmes, a principal of the Debtor and of the various new entities.

-4-

of the newly created entities (the so-called "Parrill contract,"
for the construction of a large house in Coppell), and (c)
preparing documents relating to the allegedly improper transfer
of cash and property from the Debtor.

4.  The specifics regarding these legal services are that,
in April of 2001, THBGP, Inc. was allegedly formed in order to
act as general partner for ten contemporaneously formed limited
partnerships.  The summary judgment evidence suggests that Settle
Pou did all the drafting of the documents.  Thereafter, the
business of the Debtor would be handled through these limited
partnerships (who are also Defendants in this adversary
proceeding).  Two trusts were also created to operate the various
limited partnerships:  TEMI Investment Trust I ("TEMI I") and
TEMI Investment Trust II ("TEMI II").  TEMI I and TEMI II,
spendthrift trusts for the benefit of Terry Holmes' family, owned
THBGP, Inc.

5.  The Chapter 7 Trustee's evidence and argument, in
connection with the motion for summary judgment, emphasizes
Settle Pou's involvement as lawyers for the Debtor in creating
this corporate structure.  Allegedly, Marsha Dekan at Settle Pou
worked with Mr. Howard of the Howard & Co. accounting firm
(another Defendant herein) to create the trusts, while Settle Pou
attorney Jeff Mosteller prepared the limited partnership
documents and forms that the Debtor would execute authorizing the

newly formed entities to use its name. Ms. Dekan obtained
general trust and partnership document forms from Mr. Howard, and
then forwarded the completed documents to Mr. Howard for review.
A letter from Mr. Mosteller dated May 22, 2001 (Trustee's App. at
74) shows that he delivered the trust documents and general
partnership agreement to Mr. Tom Hobden, an officer of the
Debtor, requesting that they be executed and notarized. A copy
of the TEMI II trust document, at Trustee's App. 76 through 94,
shows that it was executed and notarized dated April 20, 2001, a
date nearly a month prior to Mr. Mosteller's delivery of the
documents to Mr. Hobden for execution. The Chapter 7 Trustee
alleges that this was the beginning of a pattern of back-dating
documents by Debtor's insiders. The Trustee asserts that Settle
Pou should have known that the notarization just mentioned was
false, since it bore a date long-prior to the firm's case file
being opened, and long before the documents were drafted.

6. In its summary judgment evidence and argument, Settle
Pou lays most of the responsibility for the allegedly improper
business restructuring of the Debtor at the feet of Howard & Co.
and of Mr. Holmes, essentially relegating itself to the role of
scrivener of the various corporate or partnership documents that
were required to be drafted. Settle Pou suggests that Howard &
Co. was the main advisor on this restructuring, not Settle Pou.
Settle Pou's summary judgment evidence to support this is

-6-

deposition testimony of Mr. Howard, generally describing the advice he gave concerning creating the new business structure. Moreover, Settle Pou's evidence and argument is that the business restructuring was to be on a going-forward basis and would minimize taxes, provide estate planning benefits, and offer protection of *future* assets. Settle Pou essentially contends its legal work was not intended to address current creditor problems or looming liability or insolvency issues confronting the Debtor.

7. But the Chapter 7 Trustee, through his summary judgment evidence and arguments, begs to differ. He emphasizes the fact that, on May 17, 1999 (approximately two years earlier), Carpenter/Perez had sued the Debtor for construction defects with a home they had previously purchased from the Debtor. On November 7, 2001, a jury delivered a verdict in favor of Carpenter/Perez. But the trial court judge entered a judgment notwithstanding the verdict. Carpenter/Perez appealed. On December 18, 2003, the appeals court reversed and rendered judgment in favor of Carpenter/Perez. Carpenter/Perez filed an abstract of judgment. The Debtor appealed to the Texas Supreme Court, which denied relief. On April 6, 2005, the trial court entered judgment against the Debtor. Another law firm, McElree Smith, represented the Debtor in the appeal and was also retained to negotiate coverage issues with the Debtor's insurance carrier, which had defended the Debtor through trial but denied coverage

following trial. But during the pendency of the Carpenter/Perez
appeal, Settle Pou continued to represent the Debtor creating
additional limited partnerships as part of, in the words of
Settle Pou, "what had, by that point, become Terry Holmes'
established business plan." Settle & Pou, P.C.'s Motion for
Complete Summary Judgment and Brief in Support (the "Settle Pou
MSJ")[DE #148]. Settle Pou emphasizes that, by the time the
final verdict was entered in April of 2005 in favor of
Carpenter/Perez, it had been four years since Mr. Holmes decided
to create his new business structure. But the Chapter 7 Trustee
emphasizes that Carpenter/Perez became a disputed, problematic,
potential liability of the Debtor in at least May 1999—roughly
two years before the business restructurings.

    8.  The Chapter 7 Trustee, also through his summary judgment
evidence and arguments, emphasizes the fact that Settle Pou was
representing the Debtor in an arbitration brought by AGF Denton
Ranch beginning in October of 1999. The AGF Denton Ranch
arbitration is unrelated to the Carpenter/Perez suit. In October
of 2000, an arbitration award was entered against the Debtor in
favor of AGF Denton Ranch in the approximate amount of $2.34
million. Settle Pou filed a proceeding in state court to vacate
the arbitration award. Instead, judgment was entered by the
state court in favor of AGF Denton Ranch in the approximate
amount of $2.5 million on May 21, 2001. AGF Denton Ranch

-8-

commenced garnishment actions against the Debtor, which, Settle
Pou asserts, prevented the Debtor from obtaining financing and
resulted in a shut down of the business. Settle Pou attempted to
reach, and was successful in reaching, settlement with AGF Denton
Ranch regarding the garnishment action. The Chapter 7 Trustee
believes that, through this representation in connection with the
AGF Denton Ranch matter, Settle Pou obtained intimate and
extensive knowledge regarding the financial conditions of Terry
Holmes, personally, and of the Debtor.

9.   The Chapter 7 Trustee also emphasizes that, in April of
2001, the Debtor was in discussions with the Parrills to build a
large and expensive house. The Parrills had contacted the Debtor
in December of 2000 with a proposed construction contract, and
Settle Pou was engaged in January of 2001 to negotiate the
contract on behalf of the Debtor. The original price was $6.6
million. The chronology regarding the house is unclear, but, the
Chapter 7 Trustee argues that the evidence suggests that the
first contract executed by the Parrills contemplated that the
Debtor would be the contractor. Then, the Trustee asserts that
Mr. Mosteller substituted one of the new entities, The Holmes
Builders at the Landings, Ltd., which was a single asset limited
partnership, as the contractor. The Trustee asserts that
repeated references in Settle Pou's billing records regarding
this transaction concerning "status of outside matters affecting

the agreement with the Parrills" refers to creditor claims facing the Debtor, including the AGF Denton Ranch judgment.  In this regard, the Chapter 7 Trustee also highlights an e-mail from the Parrill's lawyer to Mr. Mosteller, dated April 20, 2001 (Trustee's App. at 129, emphasis added), which states that "the Parrills have agreed that the foundation work previously completed and the future construction to commence will be separated and that the Abbreviated Form of Agreement Between Owner and Contractor will be entered into ***by a different entity than The Holmes Builders, Inc.*** ("THB") pursuant to a new business structure to help protect homeowners from any liabilities which might arise from previous construction contracts of other homes." Accordingly, it appears that there is a genuine issue of disputed fact from this e-mail as to whether the ***Debtor*** had already begun work on the construction of the house as of April 20, 2001.  The Chapter 7 Trustee also highlights that, though the name of the contractor was changed in the contract, it was the employees of The Holmes Builders, Inc. that continued to perform all construction for the newly formed entities until at least December 31, 2002.  The Trustee also references a memorandum by Mr. Hobden (as earlier mentioned, an officer of the Debtor) explaining the new corporate structure to all employees that makes clear that the newly formed limited partnership and "THBGP, Inc. have contracted with The Holmes Builders, Inc. [the Debtor]

-10-

for the use of its employees to manage the construction in progress being built by any of the" newly formed limited partnerships.  Trustee's App. at 165.  Effective December 31, 2002, all of the employees of the Debtor were announced to be transferred to THBGP, Inc.  In his memorandum to employees, Mr. Hobden described the Debtor as "***the company that has the legal problems that caused us to form the other companies***."  Trustee's App. at 167 (emphasis added).

10.  The Chapter 7 Trustee urges, in summary, that it is apparent from the summary judgment evidence (or, that there is at least a genuine issue of material fact created in the summary judgment evidence) that Settle Pou was significantly involved in facilitating transfers of assets among various newly created entities and the Holmeses, pointing to the following: (1) an email from Tom Hobden to defendant Gary Kroll, copying Jay Settle of Settle Pou, asking about how to handle transfers between old and new entities ("to make things appear arms length") (Trustee's App. at 171); (2) in 2003, Settle Pou created Dolce Investment, LLC to act as general partner for three additional limited partnerships that had been formed as part of the Holmes entities' building business (Trustee's App. at 174-78); (3) in June of 2003, Settle Pou drafted a deed of trust for a $1.2 million piece of real property on Sandy Lake Road in Coppell, Texas, which identified Robert Pou (of Settle Pou) as trustee, and which also

involved the distribution of approximately $417,000 to the Terry Holmeses by way of a promissory note (Trustee's App. at 179-86); and (4) during this entire period and prior, Settle Pou continued to provide legal services forming new entities and providing counsel regarding real estate transactions to Mr. Holmes and the Debtor.

11.   Settle Pou presents summary judgment evidence and argument denying any knowledge of a greater scheme to transfer assets from the old company to the new limited partnerships.  In any event, Settle Pou asserts that the inter-company real estate transactions were fair and reasonable.

B.   Conclusions and Ruling in Connection with the Settle Pou Motion for Summary Judgment.

Viewing the summary judgment evidence in the light most favorable to the non-moving party (*i.e.,* the Chapter 7 Trustee), the question before the court is whether there is any genuine issue as to any material fact?  If not, then, under the material undisputed facts, is Settle Pou entitled to judgment as a matter of law?  The court will start with the negligence cause of action that the Trustee has alleged against Settle Pou in connection with their legal services provided to the Debtor.

**The Cause of Action for Attorney Negligence a/k/a Malpractice.**

The Chapter 7 Trustee has asserted a count of negligence against Settle Pou on behalf of the Debtor's estate.

-12-

A negligence cause of action against an attorney is, of course, the same as what is more commonly known as a "legal malpractice" claim.  And the law in this regard is that "[a]n attorney [performing legal services] is held to the standard of care that would be expected to be exercised by a reasonably prudent attorney." *Floyd v. Hefner*, 556 F. Supp. 2d 617, 660 (S.D. Tex. 2008).  To succeed in a legal malpractice or negligence action, a plaintiff must prove (I) that the attorney owed the plaintiff a duty, (ii) that the attorney breached that duty, (iii) that such breach was the proximate cause of plaintiff's injuries, and (iv) that damage occurred.  *Id*.  "The attorney's conduct is evaluated based on the information that the attorney had at the time he was allegedly negligent." *Id*.  So, in summary, Settle Pou would be entitled to summary judgment on the negligence count, if there is no disputed material fact in the summary judgment record that might suggest that Settle Pou did not exercise "that degree of care, skill and diligence as attorneys of ordinary skill and knowledge commonly possess." *Goffney v. Rabson*, 56 S.W.3d 186, 190 (Tex. App. – Houston [14th Dist.] 2001, *pet. denied*).

But, in fact, the Chapter 7 Trustee has presented sufficient facts to raise a genuine issue of material fact as to whether Settle Pou executed its proper duty of due care as an attorney to the Debtor.  The Chapter 7 Trustee's summary judgment evidence

-13-

and argument suggest that Settle Pou: (1) may have failed to properly advise and assist the officers and directors of the Debtor, and (2) may have, at a time when the Debtor had faced, or was facing, large disputed litigation claims, negligently devised and implemented the creation of the new business structure that ultimately facilitated a transfer of assets from the Debtor without adequate consideration being given and, thus, may have improperly denuded the Debtor of its assets. Settle Pou argues that there is no evidence that Settle Pou was negligent in performing its duties, and disputes material issues of fact such as whether Settle Pou was truly devising and implementing in any material way the business restructuring and transfers, and whether Settle Pou knew or had any reason to know such restructuring was designed to hinder current creditors. But, taking the evidence in the light most favorable to the Chapter 7 Trustee, it appears that summary judgment should be denied as to the negligence cause of action and a trier of fact must hear all of the evidence surrounding Settle Pou's representation of the Debtor and whether it breached its duty to act as a reasonably prudent attorney under all the circumstances.

**The Cause of Action for Breach of Fiduciary Duty.**

The Chapter 7 Trustee has also asserted a count of breach of fiduciary duty against Settle Pou on behalf of the Debtor's estate. This is more complex, and is a somewhat confusing area

-14-

of law.

"An attorney has a fiduciary duty to his client as a matter
of law." *Floyd v. Hefner*, 556 F. Supp. 2d at 661.  An attorney's
fiduciary duty to his client requires the attorney to render a
full and fair disclosure of the facts material to the client's
representation.  *Id.*  Breaches of this fiduciary duty are
tantamount to concealment.  *Id.*  An attorney's fiduciary duty
"includes absolute candor, openness, and honesty, without
concealment or deception." *Id.*  Also, a claim for an attorney's
breach of fiduciary duty may arise when an attorney obtains
improper benefit from representing the client, "benefitting
improperly from the attorney client relationship by subordinating
the client's interests to [the interests of the attorney],
[improperly] retaining the client's funds, engaging in self-
dealing, improperly using the client's confidences, failing to
disclose conflicts of interest, and making misrepresentations to
obtain these results." *Id.*  Boiling the matter down to its
essence, the focus of a breach of fiduciary duty claim may
involve outright concealment somehow of a lawyer, or may involve
an attorney obtaining an improper benefit from representing a
client; whereas, in contrast, the focus of a legal malpractice
claim is simply whether the attorney adequately represented the
client.  *Floyd*, 556 F. Supp. 2d at 662.  A problem here is that the Chapter 7 Trustee asserts that

A problem here is that the Chapter 7 Trustee asserts that

Settle Pou breached a fiduciary duty to the Debtor with the very same acts alleged in connection with the negligence count: specifically, that Settle Pou (1) failed to properly advise and assist the officers and directors of the Debtor, (2) devised and implemented the creation of the new business structure, (3) facilitated and "papered" the improper transfer of assets from the Debtor without adequate consideration being given and, thus, improperly denuded the Debtor of its assets; (4) failed to acknowledge and appropriately address its conflicts of interest and those of officers and directors (the Trustee, by the way, presented almost no evidence of the specifics of this); and (5) took steps to hide or conceal the fraudulent nature of the transactions with the affiliated-entity Defendants.

The court grants Settle Pou summary judgment on this count, concluding that this cause of action must fail, even construing the evidence in the light most favorable to the Chapter 7 Trustee, because of the Texas anti-fracturing rule. "The rule against dividing or fracturing a negligence claim prevents legal malpractice plaintiffs from opportunistically transforming a claim that sounds only in negligence into other claims." *McLendon v. Detoto*, 2007 WL 1892312, *2 (Tex. App. – Houston [14[th] Dist.] 2007, *pet. den'd*) (not reported in S.W.3d). "If the gist of a client's complaint is [truly nothing more than] that the attorney did not exercise the degree of care, skill, or diligence

-16-

as attorneys of ordinary skill and knowledge commonly possess,
then that complaint should be pursued as a negligence claim,
rather than some other claim." *Id.*   Dividing a claim for legal
malpractice into separate claims for negligence, breach of
contract, fraud, or any other claim will not change that the
claim is one sounding in negligence.  *Id.*  Texas law does not
permit a plaintiff to fracture a claim that sounds only in
negligence into other claims.

   The Chapter 7 Trustee suggests that he is asserting
separate, alternative theories for the same Settle Pou conduct.
In other words, the Chapter 7 Trustee argues that there is an
alternative interpretation for Settle Pou's conduct:
specifically, that Settle Pou did not **merely** give the Debtor bad
legal advice–breaching their duty to act as reasonable prudent
lawyers–but, in fact, Settle Pou did precisely what the Debtor
and its principals wanted (*i.e.,* created the legal documentation
to denude the Debtor) and this was a breach of their fiduciary
duty to show abundant good faith and the like, **and** Settle Pou was
**concealing** from the Debtor the impropriety of the denuding.  But
the court concludes that the gravamen of the Chapter 7 Trustee's
complaint is really that Settle Pou failed to exercise the degree
of care, skill, or diligence that attorneys of ordinary skill and
knowledge commonly possess—which is essentially a legal
malpractice claim.  There is no summary judgment evidence that

-17-

Settle Pou concealed material information from the Debtor. *If* Settle Pou represented the Debtor in a course of denuding its assets without revealing the risks (*i.e.,* it concealed the risks), then this was perhaps malpractice; but there is no summary judgment evidence that Settle Pou concealed specific facts from their client, or concealed potential conflicts of interest they had, or the like. And there is no summary judgment evidence that Settle Pou personally benefitted from their relationship with the Debtor (other than being paid their attorneys fees, Fourth Amended Complaint, paragraph 43); a personal benefit that would suggest breach of fiduciary duty would be something such as using client information for Settle Pou's own gain, subordinating the interest of the client to their own interest, *etc*. Again, if what the Chapter 7 Trustee alleges is true, then Settle Pou may have failed to exercise the degree of care that attorneys of ordinary skill and knowledge commonly possess, in their giving of advice to their client. But giving bad advice, or failing to give appropriate advice, or possibly ignoring a client's improper acts, is a failure to exercise due care in execution of the attorney's services, and is potential malpractice, not a breach of fiduciary duty. Accordingly, summary judgment should be granted in favor of Settle Pou on the breach of fiduciary cause of action because, viewing the summary judgment evidence in the light most favorable to the Trustee,

-18-

the breach of fiduciary duty claim is not viable and is simply an impermissible fracturing of the negligence/malpractice claim.

**The Cause of Action for "Aiding and Abetting the Breach of Fiduciary Duty of the Debtor's Officers and Directors."**

Finally, the Chapter 7 Trustee has asserted a count of "Aiding and Abetting the Officers' and Directors' Breach of Their Fiduciary Duty to the Debtor" against Settle Pou on behalf of the Debtor's estate.  This one is also a complex and confusing area of law.

The Chapter 7 Trustee correctly argues that the Debtor's officers and directors owed the Debtor various fiduciary duties. The Trustee further presents summary judgment evidence showing that there are genuine issues of material fact that the Debtor's officers and directors breached those fiduciary duties.  The Trustee further asserts that Settle Pou aided and abetted the officers and director in their alleged breaches of these fiduciary duties owed to the Debtor.

The court starts by noting that, "[i]t is settled as the law of [the State of Texas] that where a third party knowingly participates in the breach of duty of a fiduciary, such third party becomes a joint tortfeasor with [that] fiduciary and is liable as such." *Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 160 S.W.2d 509, 574 (Tex. 1942).  *See also Woloshen v. State Farm Lloyds*, 2008 WL 4133386 (N.D. Tex. 2008) (Fitzwater, J., not reported in F. Supp. 2d) (recognizing that a cause of action for

aiding and abetting breach of fiduciary duty exists in Texas, citing *Kinzbach* among other cases).

So, generally, there is such a cause of action of aiding and abetting another's breach of his fiduciary duty.  But there are at least two legal obstacles that might be relevant here.  One potential obstacle is, once again, the anti-fracturing rule— specifically, the prospect that this cause of action of Settle Pou's alleged aiding and abetting a breach by the officers and directors of their fiduciary duties to the Debtor is just re-spinning the negligence cause of action.  Similar anti-fracturing arguments presented themselves to Judge Harmon in *Floyd v. Hefner*, 556 F. Supp. 2d 617 (S.D. Tex. 2008).  Certain lawyers in that case moved for summary judgment on all claims against them, arguing, with regard to the aiding and abetting breach of the directors' fiduciary duty and conspiracy, that the plaintiffs were impermissibly fracturing their negligence claim.  *Id*. at 659.  Citing *Deutsch v. Hoover, Bax & Slovacek, L.L.P.*, 97 S.W.3d 179 (Tex. App. – Houston [14th Dist.] 2002, *no pet.*), Judge Harmon reiterated that "Texas law prohibits a plaintiff from fracturing his negligence claim into other claims; if the gist of the claim is that the attorney did not exercise the degree of care as an attorney of ordinary skill," *Deutsche,* 79 S.W.3d at 189, the claim cannot be fractured into an additional claim of breach of the **attorney's** fiduciary duty.  *Floyd*, 556 F. Supp. 2d

-20-

at 659.

But Judge Harmon said that aiding and abetting a breach of the *director's* fiduciary duty and the conspiracy claims "concerned the Lawyers actions *vis-a-vis the other Defendants*, in particular, the Directors' breach of [their] fiduciary duties." *Id*. And "Where supporting evidence exists, Texas law permits a party to bring *both* a malpractice action based on his lawyer's breach of [*his*] independent duties and a separate claim for the lawyer's assistance with the breach of *another's* fiduciary duties." *Id*. *Turoff v. Jackson Walker, L.L.P. (In re Precept Bus. Servs., Inc.),* 2004 WL 2074169 (Bankr. N.D. Tex. 2004) (Felsenthal, J., *not reported in B.R.*).

So this court reads Judge Harmon's authority (and cases cited by her) to mean that "[t]he rule against fracturing a negligence claim [applies] to claims brought directly against the [lawyers] as fiduciaries," but does not preclude a claim that a lawyer assisted *another* in breaching *his* fiduciary duty. This court agrees with Judge Harmon's analysis of Texas law. *Floyd*, 556 F. Supp. 2d at 660.

Now, while it is true that the very same conduct of Settle Pou is alleged by the Chapter 7 Trustee with regard to this aiding and abetting count as is alleged with regard to the negligence claim—*i.e.*, (1) Settle Pou's knowing participation in failing to properly advise and assist the officers and directors

of the Debtor; (2) its knowing participation in devising and
implementing the creation of the new business structure; (3) its
knowing participation in facilitating and "papering" the improper
transfer of assets from the Debtor without adequate consideration
being given and thus improperly denuding the Debtor of its
assets; (4) its knowing participation in failing to acknowledge
and appropriately address its conflicts of interest and those of
officers and directors; and (5) its knowing participation in
taking steps to hide or conceal the fraudulent nature of the
transactions with the affiliated-entity Defendants—the reality is
that, with negligence, it is an allegation that all of this
constituted a failure to act as a reasonable and prudent attorney
in the rendering of advice to the Debtor.  Whereas, with the
aiding and abetting the officers/directors count, it is an
allegation that all of this constituted a knowing participation
and assistance in *someone else's* breach of their fiduciary duty.
This, unlike breach of *one's own* fiduciary duty, is not simply a
re-casting of the negligence claim.

Now, the other possible legal obstacle with this theory of
aiding and abetting the officer's and director's breach of their
fiduciary duties involves what the court will refer to as the
*Mack v. Newton*, 737 F.2d 1343 (5th Cir. 1984) and *Magten Asset
Mgmt. Corp. v. Paul Hastings Janofsky & Walker*, LLP, 2007 WL
129003, *2-3 (D. Del. Jan 12, 2007) arguments.  These cases stand

for the proposition that has been followed by a majority of the courts throughout the nation that fraudulent transfer liability cannot be imposed upon third parties who did not receive the assets in question or were not ones for whose benefit the transfers were made.  Settle Pou argues that this theory of aiding and abetting the officer's and director's breach of their fiduciary duties is essentially an argument of aiding and abetting a fraudulent transfer and an attempt to impose liability on a third party who did not receive the assets transferred and was not the one for whose benefit the transfers were made.  The court disagrees.

The causes of action asserted in *Mack v. Newton* were conversion, civil conspiracy, and fraudulent conveyance under the old Bankruptcy Act.  *Mack v. Newton*, 737 F.2d at 1354. Additionally, the trustee moved under the Texas fraudulent conveyance statute.  *Id*.  Ergo, the trustee in *Mack v. Newton* was not seeking recovery based upon breach of fiduciary duty or aiding and abetting breach of fiduciary duty.  So while it is perfectly true that "the general rule under [the Bankruptcy Code or the old Act] is that one who did not actually receive any of the property fraudulently transferred (or any part of a 'preference') will not be liable for its value, even though he may have participated or conspired in the making of the fraudulent transfer (or preference)," (*Mack v. Newton*, 737 F.2d

-23-

at 1357), the Chapter 7 Trustee, in this case, is not moving under the fraudulent transfer statute and arguing something amazingly similar such as "conversion" and "conspiracy" regarding the same acts—and, in the process, joining Defendants who would not normally have liability under the relevant fraudulent transfer statutes. Rather, the Chapter 7 Trustee is asserting the Debtor's right to sue its former counsel for aiding and abetting its former officers and directors in breaching their fiduciary duties owed to the corporation, which stands separate and apart from the fraudulent transfer cause of action (and seems to involve more than simply the acts of the actual transfers). Accordingly, as to the question of aiding and abetting breach of fiduciary duty, this court thinks *Mack v. Newton* is not applicable.

However, the *Magten* case is more relevant, perhaps, because the plaintiff there included, as one of the causes of action, aiding and abetting the officers of a corporation in breaching the fiduciary duties they owed to the corporation, by carrying out the allegedly fraudulent transfer without adequate consideration, rendering the corporation insolvent. *Magten*, 2007 WL 129003, *1. *Magten* cites *Mack v. Newton* in asserting that "[t]he majority of courts interpreting the Bankruptcy Code have declined to impose liability for fraudulent transfers on third parties who did not receive the assets in question." *Id.* at *2.

-24-

Moreover, the court goes on to note that "liability [under most states' uniform fraudulent transfer acts] cannot be imposed on non-transferees under aiding and abetting or conspiracy theories." *Id.* The court determined that Magten could not "establish its claim for aiding and abetting and conspiracy based upon an alleged transfer under the" Montana Uniform Fraudulent Transfer Act because the Paul Hastings Law Firm, the defendant, "did not receive the assets in question." *Id.* at *3.

Settle Pou would have the court stop reading *Magten* here, and conclude that there can be no cause of action for aiding and abetting breach of fiduciary duties when a lawyer has counseled a corporation in a transaction that is alleged to be a fraudulent transfer. But that is not what the *Magten* court rules. The court went on to state: "To the extent that any issue remains regarding Magten's claim that Paul Hastings committed malpractice and aided and abett[ed] the officers and directors of [a different corporation, Clark Fork,] to breach their fiduciary duties, the Court concludes that Magten lacks standing to pursue these claims." *Id.* at *3. Magten could only assert the breach of fiduciary duty claims (and the aiding and abetting thereof) as a derivative claim and, under the Montana statute authorizing derivative claims against limited liability companies, "such claims may only be brought by [a] member of the company, who was a member at the time of the transaction at issue." *Id. at* *3.

-25-

As Magten was not a member of the company in question, Magten had no authority to assert the aiding and abetting of breach of fiduciary duty and malpractice claims against Paul Hastings. *Id.* The court added: "Even if Magten [could] bring a derivative claim . . . as a creditor, Magten has not demonstrated that it was a creditor of Clark Fork at the time of the alleged transaction at issue." *Id.*

So in *Magten*, rather than barring outright claims for aiding and abetting breach of fiduciary duty, the Delaware District Court appears to have recognized, at least, the potential viability of an aiding and abetting cause of action, but found in that case that the party asserting such cause of action lacked standing to pursue it.

In summary, with respect to the aiding and abetting the officer's and director's breach of fiduciary duties, this court believes the Chapter 7 Trustee has presented a viable cause of action and, as there are disputed material facts as to whether the cause of action against the officers and directors can prevail, Settle Pou's motion for summary judgment on this claim must be denied.

**The *In Pari Delicto* Defense of Settle Pou.**

Finally, the court will briefly address the *in pari delicto* defense raised by Settle Pou.

"The equitable defense of *in pari delicto*, which means 'in

equal fault,' is based on the common law notion that a
plaintiff's recovery may be barred by his own wrongful conduct."
*Howard v. Fidelity and Deposit Co. of Maryland, (In re Royale
Airlines, Inc.)*, 98 F.3d 852, 855 (5th Cir. 1996). "Two
fundamental premises underlie this defense: (1) that courts
should not lend their good offices to mediating disputes among
wrongdoers; and (2) that denying judicial relief to an admitted
wrongdoer is an effective means of deterring illegality." *Murray
v. Royal Alliance Assoc.*, 375 B.R. 208, 213 (M.D. La. 2007).
Some courts have found that the defense may be asserted against a
bankruptcy trustee, as he stands in the shoes of a debtor who may
have, through its officers and directors, perpetrated bad acts.
The Fifth Circuit has not addressed this issue. The court
determines that, even if the *in pari delicto* doctrine is
available to use against a bankruptcy trustee, it is not a basis
to grant summary judgment in favor of Settle Pou in the case at
bar, because such defense is intensely factual and there are
genuine issues of disputed fact relevant to this defense. The
Texas Supreme Court, in the case of *Lewis v. Davis*, indicated
that courts should, when presented with this defense, "consider
how the facts and equities of the individual case interact with
the policy *in pari delicto* was designed to serve." *Hill v. Day
(In re Today's Destiny, Inc.),* 388 B.R. 737, 749 (Bankr S.D. Tex.
2008) (interpreting *Lewis v. Davis,* 199 S.W.2d 146, 151 (Tex.

1947).). "The need to consider the 'peculiar facts and equities' is particularly acute when a defendant is asserting the defense against a trustee who seeks recovery for the benefit of creditors of a wrongdoer rather than the wrongdoer himself." *Id.* This court concludes that such a policy analysis cannot be undertaken based on the summary judgment evidence as developed.

In conclusion, summary judgment is granted on the claim that Settle Pou breached its fiduciary duty to its client, the Debtor. But summary judgment is denied on the other two claims, negligence and aiding and abetting breach of fiduciary duty.

## II. THE RULE 12(b)(6) MOTION TO DISMISS OF THE MCELREE SMITH LAW FIRM

The court will now turn to the McElree Smith law firm's Motion to Dismiss for the Plaintiffs' alleged failure to state a claim upon which relief may be granted, pursuant to Rule 12(b)(6).

Basically, McElree Smith is moving to dismiss all claims asserted against it in the Plaintiffs' Fourth Amended Complaint, except for the negligence cause of action. The analysis and ruling with regard to this motion are largely the same as the Settle Pou motion, although the court is in a different procedural posture with regard to McElree Smith. Here the posture is, of course, Rule 12(b)(6) and the question, whether, when accepting the facts pled by the Plaintiffs as true, there could possibly be a viable claim against McElree Smith that would

-28-

entitle the Plaintiffs to relief.  As stated most recently by the
United States Supreme Court in *Bell Atlantic Corp. et al. v.
Twombly*, 127 S. Ct. 1955 (2007) (*"Twombly"*):  "[W]hen the
allegations in a complaint however true, could not raise a claim
of entitlement to relief" that basic deficiency should be exposed
at the point of minimum expenditure of time and money by the
parties and by the court.  *Id.* at 1966.

First, with regard to the Chapter 7 Trustee's claim that
McElree Smith breached a fiduciary duty owing to the Debtor,
paragraphs 237-241 of the Fourth Amended Complaint, for the same
reasons discussed in connection with the same claim alleged by
the Chapter 7 Trustee against Settle Pou, the court holds that
there is no viable claim pled against McElree Smith and, so, this
claim must and will be dismissed.  The claim, as pled, violates
the anti-fracturing rule.  The claim, as pled, is nothing more
than a negligence claim re-cast or re-spun into a second cause of
action.

Second, with regard to the Chapter 7 Trustee's claim that
McElree Smith aided and abetted a breach of fiduciary duty by the
Settle Pou firm, the court has granted summary judgment in favor
of Settle Pou herein, that there was no breach of a fiduciary
duty owed to the Debtor by Settle Pou.  Thus, this eliminates any
possibility of a viable claim that McElree Smith may have aided
and abetted such a breach by Settle Pou.  Accordingly, this cause

is also dismissed.

Third, with regard to the Chapter 7 Trustee's claim that McElree Smith aided and abetted a breach of fiduciary duty by the officers and directors of the Debtor, the court denies the motion to dismiss, holding that, the facts as pled, if true, could give rise to a potentially viable claim and, so, the claim must be allowed to proceed. The court relies on its reasons stated hereinabove with regard to the Settle Pou motion for summary judgment. Specifically, a claim that a lawyer aided and abetted another in the breach of that other person's fiduciary duty does not violate the antifracturing rule where, again, it is another party's fiduciary duty that is implicated. Texas law has acknowledged there is such a cause of action for aiding and abetting another's breach of his fiduciary duty. Moreover, for the same reasons discussed in the ruling on Settle Pou's motion for summary judgment, the court does not believe *Mack v. Newton* or other similar case law precludes the claim of aiding and abetting an officer or director's breach of his fiduciary duty simply because there are alleged fraudulent transfers involved or even at the heart of the lawsuit. Here, the claim is not simply an attempt to hold someone liable for a fraudulent transfer where he did not receive property or did not receive a benefit from the transfer. Here, there is actually articulated a potentially viable separate claim that officers and directors of the Debtor,

-30-

through a course of actions, some of which may have happened to
be fraudulent transfers, breached their fiduciary duties to the
Debtor, and McElree Smith is accused of aiding and abetting in
that.  While the adversary proceeding may mostly pertain to
alleged fraudulent transfers, it does, indeed, appear that there
are actions complained of in the Fourth Amended Complaint that
are not simply transfers of property *per se*, and yet are
suggested to be breaches of officers' or directors' fiduciary
duties.  It is, thus, possible that there is yet another theory
of liability here, other than negligence against professionals—
the aiding and abetting of another's breach of a fiduciary duty—
and the elements to prove this theory would be different than the
elements of a fraudulent transfer under either the Uniform
Fraudulent Transfer Act or Section 548 of the Bankruptcy Code.
Whether the alleged aiders and abetters, such as McElree Smith,
will be found liable at the end of the day is a different story,
but there is a potential claim under a Rule 12(b)(6) analysis.

     Finally, with regard to the claims of Carpenter/Perez that
they have a claim against McElree Smith for: (a) McElree Smith's
alleged aiding and abetting the breach of fiduciary duty of
Settle Pou to the Debtor; and (b) McElree Smith's alleged aiding
and abetting of the Debtor's officers' and directors' alleged
breaches of their fiduciary duties owed to the Debtor and to
Carpenter/Perez, the court grants McElree Smith's motion and must

dismiss each of these claims.

First, the court has already held and explained why the
Chapter 7 Trustee/estate has no claim against Settle Pou for
breach of fiduciary duty and, thus, McElree Smith could not have
aided any such breach.  Moreover, the court has already ruled at
a previous hearing, and will clarify once again, that a law firm
owes no independent duty to creditors of its client, so, to the
extent Carpenter/Perez are alleging that either Settle Pou or
McElree Smith had a fiduciary duty directly owed to
Carpenter/Perez that was breached, this claim is not viable and
must be dismissed.  The court relies on those cases cited in
McElree Smith's brief. *Alpert v. Crain, Caton & James, P.C.*, 178
S.W.3d 398 (Tex. App. – Houston [1st Dist.] 2005, *pet. denied*);
*Barcelo v. Elliott*, 923 S.W.2d 575 (Tex. 1996); *Malone v.
Abraham, Watkins, Nichols & Friend*, 2004 WL 1120005 (Tex. App. –
Houston [1st Dist.] 2004, *no pet.*); *Span Enterprises v. Wood*, 274
S.W.3d 854 (Tex. App. – Houston [1st Dist.] 2008, *no pet.*);
*Kastner v. Jenkens & Gilchrist, P.C.,* 231 S.W.3d 571 (Tex. App. –
Dallas 2005, *no pet.*); *McCamish, Martin, Brown & Loeffler v. F.E.
Appling Interests,* 991 S.W. 2d 787 (Tex. 1991).  Again, lawyers
owe no duty to non-clients.  Finally, as to the claim that
McElree Smith may have aided and abetted a breach by the officers
and directors of a fiduciary duty owed by the officers and
directors **to Carpenters/Perez**, this claim is not viable and must

-32-

also be dismissed.  Officers and directors owe no direct
fiduciary duty to creditors of the corporation, even during
insolvency or the zone of insolvency.  The duty owed is to the
corporation.  The confusing line of cases on this topic was
arguably clarified awhile back when the Delaware Supreme Court
handed down *N. Am. Catholic Educ. Programming Foundation, Inc. v.
Rob Gheewalla*, 930 A.2d 92 (Del. Supr. 2007), in which the
Delaware Court articulated the general rule that corporate
directors do not owe corporate creditors duties beyond the
relevant contractual terms.  *Id.* at 99.  These contractual
protections "render the imposition of an additional, unique layer
of protection (for corporate creditors) through direct claims for
breach of fiduciary duty unnecessary."  *Id.* at 101.  In fact, the
Delaware court found that an otherwise solvent company operating
in the zone of insolvency is most in need of effective and
proactive leadership, and the ability to negotiate in good faith
with corporate creditors.  *Id.*  The Delaware court further
reasoned that these goals would likely be significantly
undermined by the prospect of individual liability on the part of
directors and officers arising from the pursuit of direct actions
by corporate creditors.  *Id.*  While Texas entities are involved
in the case at bar, Delaware law is certainly instructive.  A
bankruptcy trustee has standing to pursue a breach of fiduciary
duty on behalf of the corporation/debtor, but creditors only have

standing to prosecute this type of cause of action on behalf of a corporation if a court gives them derivative standing.  Here, the court sees no reason to allow Carpenter/Perez permission to proceed derivatively on this claim when the Chapter 7 Trustee is already pursuing it.  This court has recently written an opinion germane to this issue:  *Reed v. Cooper (In re Cooper)*, 405 B.R. 801 (Bankr. N. D. Tex. 2009).  So this claim of Carpenter/Perez will be dismissed.

In summary, what survives after today against the two law firms is:  (a) the Chapter 7 Trustee's negligence claims; and (b) the Chapter 7 Trustee's claims that the law firms aided and abetted the officers and directors of their breaches of their own fiduciary duties to the Debtor.  The court will enter separate orders reflecting these rulings.

### III.  MEDIATION

The court, at the conclusion of these rulings in open court, ordered the parties to pursue mediation.  The court noted that Carpenter/Perez is the only active creditor in this three-year-old Chapter 7 bankruptcy case (and the Chapter 7 Trustee indicated that Carpenter/Perez is likely going to be the **only** allowed unsecured creditor in this case—albeit a large creditor at around $2.5 million).  It appears that, other than Carpenter/Perez and Chapter 7 administrative expense claims (*i.e.,* the Chapter 7 Trustee's fees and expenses), there is not

-34-

much else in the way of claims to be addressed.  Meanwhile, this
adversary proceeding has been pending two-plus years, with many
pretrial motion skirmishes, and is nowhere close to trial.  Trial
will ultimately be in the District Court (where there is a busy
criminal docket that must be prioritized above civil matters),
and, thus, there is no guarantee that this matter will go to
trial sooner than one year from now.  And there is already one
appeal of one of this court's rulings, with, no doubt, more to
come.

Pre-bankruptcy planning and/or asset protection is a fact-
intensive and unclear area of law.  Courts that have struggled
with it have written things like "pigs get fat and hogs get
slaughtered," *see, e.g., In re Johnson*, 80 B.R. 953, 961 n.9
(Bankr. D. Minn. 1987), (hardly a bright-line test), indicating
that there is a fine line debtors can cross whereupon there will
be a price to be paid for exuberance.  This court does not know
in this case (particularly since it has not heard witnesses nor
heard full evidence), if a jury would ultimately decide that
there is a price to be paid for the pre-bankruptcy asset
protection activities of the corporate-Debtor (and, if so, who
all should be the "payees").  However, the court does perceive
that this has become a very expensive fight—a fight that could
ultimately easily exceed the $2.5 million of prepetition
creditors' claims.  *See, e.g., Maxwell v. KPMG LLP,* 520 F.3d 713,

718 (7th Cir. 2008) (Judge Posner warning that bankruptcy judges "must . . . be vigilant in policing the litigation judgment exercised by trustees in bankruptcy . . .").

The court trusts that the parties will vigorously pursue mediation in good faith, and hopes that such mediation will bear fruit.

**\*\*\*END OF MEMORANDUM OPINION\*\*\***